IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

JUDY DIANE NOYES,               )    CIVIL NO. 16-00252 HG-KSC
                                )
              Plaintiff,        )
                                )
        vs.                     )
                                )
CAROLYN W. COLVIN, Social       )
Security Administration         )
Commissioner,                   )
                                )
              Defendant.        )
_____ )
_

**ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER**

This case involves the appeal of the Social Security
Administration Commissioner's denial of Disability Insurance
Benefits to Plaintiff Judy Diane Noyes.

On October 23, 2012, Plaintiff filed an application for
Disability Insurance Benefits pursuant to Title II of the
Social Security Act.  Plaintiff claimed that she has been
disabled since October 23, 2012 because of a rotator cuff tear
in her right shoulder.

The Social Security Administration denied her
application.  Following an administrative hearing, the
Administrative Law Judge ("ALJ") held that Plaintiff was not
disabled for a continuous period of at least 12 months

1

following her onset disability date of October 23, 2012.  The
Appeals Council denied Plaintiff's request for review and
Plaintiff appealed to this Court.

The Court **AFFIRMS** the decision of the Social Security
Administration Commissioner.

### PROCEDURAL HISTORY

On October 23, 2012, Plaintiff Judy Diane Noyes filed an
application for Disability Insurance Benefits with the Social
Security Administration.  (Administrative Record ("AR") at
175-76, 256-57, ECF No. 11).

On April 3, 2013, the Social Security Administration
denied Plaintiff's initial application.  (AR at pp. 110-13).

On August 21, 2013, the Administration denied her request
for reconsideration.  (AR at pp. 115-19).

Following the denial of Plaintiff's request for
reconsideration, she sought a hearing before an Administrative
Law Judge ("ALJ").  On July 15, 2014, an ALJ conducted a
hearing on Plaintiff's application.  (AR at pp. 32-81).  On
November 24, 2014, the ALJ issued a written decision denying
Plaintiff's application.  (AR at pp. 13-31).

Plaintiff sought review by the Appeals Council for the
Social Security Administration.  (AR at pp. 11-12).  The

Appeals Council denied further review of Plaintiff's application on April 15, 2016, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (AR at pp. 1-4).

On May 20, 2016, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny her application for Disability Benefits in this Court pursuant to 42 U.S.C. § 405(g).  (Complaint for Review of Social Security Disability Benefits Determinations, ECF No. 1).

On August 4, 2016, the Magistrate Judge issued a briefing schedule.  (ECF No. 15).

On September 30, 2016, Plaintiff filed PLAINTIFF'S OPENING BRIEF.  (ECF No. 16).

On November 14, 2016, Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 17).

On November 29, 2016, Plaintiff filed PLAINTIFF'S REPLY BRIEF.  (ECF No. 18).

On January 9, 2017, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.

**BACKGROUND**

**Plaintiff's Work History**

Plaintiff is a 55 year-old female. (Administrative Record ("AR") at p. 175, ECF No. 11). Plaintiff worked for approximately thirty years as a registered nurse in neonatal intensive care units ("NICU"). Plaintiff worked between October 1986 and October 2005 at Children's Medical Center in Minneapolis, Minnesota. (Id. at p. 265). From January 2006 until November 2012, Plaintiff was employed as a registered nurse in the NICU at Kapiolani Medical Center in Honolulu, Hawaii. (Id. at pp. 190, 204, 215-16, 265).

**Plaintiff's Right Shoulder Injury and Treatment**

In September 2009, Plaintiff injured her right shoulder at the gym. (AR at pp. 21, 282, 285, ECF No. 11). Plaintiff did not seek medical treatment for the injury for more than three years.

On October 15, 2012, Plaintiff sought treatment for the first time for her right shoulder injury. Plaintiff was examined by orthopedic surgeon Dr. Elizabeth M. Ignacio. (Id. at p. 285). A magnetic resonance imagining ("MRI") of Plaintiff's right shoulder was conducted two days later on October 17, 2012. (Id. at p. 326).

Following receipt of the MRI results, on October 22, 2012, Plaintiff was examined a second time by Dr. Ignacio.

4

(Id. at p. 288).  Dr. Ignacio informed Plaintiff that the MRI revealed that Plaintiff's right shoulder had a massive rotator cuff tear with evidence of fatty degeneration atrophy.[1]  (Id. at p. 289).  Dr. Ignacio concluded that the damage to Plaintiff's rotator cuff was not reparable.  (Id.)

The following day, on October 23, 2012, Plaintiff filed an application for Disability Benefits Insurance with the Social Security Administration pursuant to 42 U.S.C. § 423.  (AR at pp. 16, 241, ECF No. 11).

A week later, on October 30, 2012, Plaintiff was examined by Dr. Jay Marumoto for a second opinion as to the diagnosis of her rotator cuff tear.  (Id. at pp. 282-83).  Dr. Marumoto agreed that Plaintiff had a massive rotator cuff tear.  (Id. at p. 283).  Dr. Marumoto concluded that operative repair or reconstruction of Plaintiff's right shoulder was not a recommended treatment.  (Id. at p. 283).  Dr. Marumoto referred Plaintiff to physical therapy to improve strength and decrease pain in her right shoulder.  (Id.)

On November 7, 2012, Plaintiff was evaluated for a third time by Dr. Ignacio.  (Id. at pp. 290-91).  Dr. Ignacio agreed with Dr. Marumoto that Plaintiff's right rotator cuff was not

_____

[1] Fatty degeneration atrophy is a condition where muscle fibers weaken and fatty tissue infiltrates around the rotator cuff muscles after a rotator cuff tear.

reparable by surgery.  (<u>Id.</u> at p. 291).  Dr. Ignacio advised Plaintiff that the pain and weakness in her right shoulder may prevent her from performing her work as a nurse in the NICU. (<u>Id.</u>)

The same date, November 7, 2012, Plaintiff resigned from her position as a NICU nurse.  (<u>Id.</u> at pp. 37, 175, 231). Plaintiff ended her employment because her right shoulder weakness prevented her from picking up babies, from performing CPR, and from moving medical equipment.  (<u>Id.</u> at pp. 37-38).

On November 16, 2012, Plaintiff sought physical therapy for her right shoulder based upon the recommendation of Dr. Marumoto.  (<u>Id.</u> at pp. 309-10).  Plaintiff believed that physical therapy would not assist her and she did not seek further treatment.  (<u>Id.</u> at p. 40).

**The Social Security Administration's Review of Plaintiff's October 2012 Application For Disability Benefits**

Plaintiff's October 23, 2012 application for Disability Insurance Benefits was denied on April 3, 2013.  (AR at pp. 110-13, ECF No. 11).

Following the initial denial, Plaintiff moved for reconsideration.  (<u>Id.</u> at p. 114).  On April 15, 2013, Plaintiff was evaluated for a fourth time by Dr. Ignacio in support of her motion for reconsideration.  (<u>Id.</u> at pp. 302-

03).  Dr. Ignacio concluded that Plaintiff continued to have a massive rotator cuff tear and pain in her right shoulder. (<u>Id.</u>)  For the first time, Dr. Ignacio prescribed pain medications for Plaintiff.  (<u>Id.</u> at pp. 267, 319).

On August 21, 2013, the Social Security Administration denied Plaintiff's motion for reconsideration.  (<u>Id.</u> at pp. 115-19).

On September 30, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (<u>Id.</u> at p. 120).

Before the administrative hearing, nearly a year after her last examination, Plaintiff was evaluated by Dr. Ignacio for a fifth time on March 13, 2014.  (<u>Id.</u> at pp. 314-15).  Dr. Ignacio determined that Plaintiff's right shoulder pain "remained the same" and prescribed additional medications. (<u>Id.</u> at p. 315).

On July 15, 2014, a hearing on Plaintiff's application for Disability Benefits was held before an ALJ.  (<u>Id.</u> at pp. 32-81).

The ALJ denied Plaintiff's application for Disability Insurance Benefits, finding that Plaintiff had not met the requirements set forth in 42 U.S.C. § 423.  (AR at pp. 16-27, ECF No. 11).

42 U.S.C. § 423 establishes the statutory eligibility

requirements which an individual must satisfy to receive a
disability insurance benefit pursuant to the Social Security
Act.  42 U.S.C. § 423(a)(1).  An individual is eligible to
receive disability insurance benefits if the individual:

> (A)      is insured for disability insurance benefits as
> determined by 42 U.S.C. § 423(c)(1);
>
> (B)      has not attained retirement age;
>
> (C)  has filed an application for disability insurance
> benefits; and,
>
> (D)  is under a disability as defined in 42 U.S.C. §
> 423(d)(1)(A).

42 U.S.C. § 423(a)(1)(A)-(D).

The ALJ evaluated the four requirements of 42 U.S.C. §
423(a)(1).

First, the ALJ reviewed if Plaintiff was insured for
disability insurance benefits pursuant to 42 U.S.C. §
423(c)(1).  The ALJ determined that Plaintiff's earnings
record showed that she had made disability insurance coverage
payments.  Based on Plaintiff's work history, the ALJ found
that Plaintiff had acquired quarters of coverage that will
last until December 31, 2017.  (AR at p. 16, ECF No. 11).

Next, the ALJ found that Plaintiff fulfilled sections (B)
and (C) of Section 423 because she had not reached retirement
age at the time of her application and had properly filed an
application for disability insurance benefits.

Finally, the ALJ examined if Plaintiff suffered from a disability pursuant to 42 U.S.C. § 423(d).

42 U.S.C. § 423(d)(1)(A) provides, as follows:

The term "disability" means— inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Plaintiff claims that she has been disabled for a continuous period starting on October 23, 2012, due to her right shoulder injury. (AR at pp. 223-231, 241, ECF No. 11).

The Administrative Law Judge determined that Plaintiff failed to establish that she had a disability that lasted or was expected to last at least twelve months following her alleged onset date of disability of October 23, 2012. (Id. at p. 26).

The ALJ found that Plaintiff was not capable of performing her past relevant work as a registered nurse. (Id. at p. 23). The Administrative Law Judge found, however, that there was work that existed in significant numbers in the economy that Plaintiff could perform. (Id. at pp. 23-26). The Administrative Law Judge relied on the testimony of a vocational expert to find that someone with Plaintiff's limitations could perform work as an Usher, Barker, or Furniture Rental Consultant. (Id. at pp. 24-26).

Plaintiff sought review of the Administrative Law Judge's decision with the Appeals Council.  The Appeals Council declined Plaintiff's request for review and rendered the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (<u>Id.</u> at pp. 1-4).

## <u>STANDARD OF REVIEW</u>

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>see</u> 42 U.S.C. § 1382c(a)(3)(A); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole.  <u>See</u> 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>see</u> <u>also</u> <u>Tylitzki v. Shalala</u>, 999 F.2d 1411, 1413 (9th Cir.

1993).

## ANALYSIS

I.   **Plaintiff's History And Claimed Disability**

The Administrative Record reflects that Plaintiff was born in August 1961.  (Administrative Record ("AR") at p. 241, ECF No. 11).  Plaintiff became a registered nurse in 1986 and worked in neonatal intensive care units ("NICU") for nearly 30 years.  (Id. at pp. 190, 204, 215-16, 265).

In September 2009, Plaintiff injured her right shoulder while lowering a 45-pound weight at the gym.  (Id. at pp. 21, 282, 285).

Plaintiff continued to work as a NICU registered nurse for the next three years following her injury.  Plaintiff continued to work through October 2012, the point at which she first sought evaluation for right shoulder pain.

A.   **Objective Medical Findings in October 2012**

On October 15, 2012, Plaintiff was examined by orthopedic surgeon Dr. Elizabeth M. Ignacio.  (AR at p. 285, ECF No. 11). Plaintiff reported that she had right shoulder weakness with intermittent pain.  (Id.)  Plaintiff claimed her pain was "0-1" on a scale of 1-10, with 10 being the highest severity of pain.  (Id.)

11

Dr. Ignacio's examination revealed that Plaintiff's right shoulder had full range of motion. (Id. at p. 287). Dr. Ignacio conducted an impingement test that determined that Plaintiff suffered some pain in her right shoulder. (Id.) Dr. Ignacio ordered a magnetic resonance imagining ("MRI") be done of Plaintiff's right shoulder. (Id.)

Following receipt of the MRI results, on October 22, 2012, Plaintiff was examined a second time by Dr. Ignacio. (Id. at p. 288). At this appointment, Plaintiff claimed that she had "moderate" pain. (Id.) Dr. Ignacio found that Plaintiff had some pain based on the impingement test. (Id.)

Dr. Ignacio informed Plaintiff that the MRI revealed that Plaintiff's right shoulder had a massive rotator cuff tear with evidence of fatty degeneration atrophy. (Id. at p. 289). Dr. Ignacio concluded that the damage to Plaintiff's rotator cuff was not reparable. (Id.) Dr. Ignacio recommended that Plaintiff seek a second opinion from Dr. Jay Marumoto, a specialist in advanced arthroscopy. (Id.)

A week later, on October 30, 2012, Plaintiff was examined by Dr. Marumoto. (Id. at pp. 282-83). Plaintiff reported that she had severe pain that was 9 on a scale of 1-10. (Id. at p. 282). Dr. Marumoto concluded that surgery was not a suitable treatment for Plaintiff's right shoulder injury.

(Id. at p. 283).   Dr. Marumoto explained to Plaintiff that her prognosis for recovery was poor.   (Id.)   Dr. Marumoto recommended that Plaintiff seek physical therapy for treatment.   (Id.)

### B.   Objective Medical Findings and Plaintiff's Resignation from Work in November 2012

On November 7, 2012, Plaintiff was evaluated for a third time by Dr. Ignacio.   (AR at pp. 290-91, ECF No. 11).   At this appointment, Plaintiff claimed to have "mild," intermittent, and dull pain in her right shoulder.   (Id. at p. 290).   Plaintiff continued to have full range of motion in her right shoulder.   (Id.)

Dr. Ignacio agreed with Dr. Marumoto's diagnosis that Plaintiff's right rotator cuff was not reparable by surgery.   (Id. at p. 291).   Dr. Ignacio stated that she believed that Plaintiff's rotator cuff injury was permanent and that it would preclude her from lifting with her right arm such that she should no longer work as a NICU nurse.   (Id.)

The same date, on November 7, 2012, Plaintiff resigned from her work as a registered nurse in the NICU at Kapiolani Medical Center.   (Id. at pp. 37, 175, 231).

Nine days later, on November 16, 2012, Plaintiff was evaluated by Physical Therapist Roy S. Murakami.   (Id. at pp.

13

309-10).  Murakami concluded that Plaintiff had weakness in her right shoulder and some pain.  (<u>Id.</u> at p. 309).  Murukami stated that the patient should undergo physical therapy two times a week to decrease pain and increase range of motion and strength in the right shoulder.  (<u>Id.</u> at p. 310).

Plaintiff did not continue with physical therapy as she determined that it was "not going to really make a difference."  (<u>Id.</u> at p. 40).

### C.   Plaintiff's Examinations Following November 2012

On April 15, 2013, more than five months after her last evaluation, Plaintiff was examined a fourth time by Dr. Ignacio.  (AR at pp. 302-03, ECF No. 11).  Plaintiff reported that she had "moderate" and intermittent right shoulder pain. (<u>Id.</u> at p. 302).  Plaintiff had nearly full range of motion in her right shoulder and significant strength with some pain. (<u>Id.</u> at p. 303).

Dr. Ignacio concluded that Plaintiff "will always have severe limitations of the use of her right arm, and will likely be needing pain medications on a daily basis, and therefore, I support her claim that she has a significant disability that makes employment difficult for her."  (<u>Id.</u> at p. 303).

14

Dr. Ignacio prescribed medication to Plaintiff for the first time at the April 15, 2013 appointment.  The April 15, 2013 appointment was the fourth examination Plaintiff Noyes had with Dr. Ignacio over a period of seven months from October 2012 to April 2013.  Dr. Ignacio prescribed Voltaren and Tramadol to treat Plaintiff's right shoulder pain and prescribed Naproxen as an anti-inflammatory.  (Id. at pp. 267, 318-19).

Plaintiff was not evaluated by Dr. Ignacio again for nearly a year.  On March 13, 2014, Plaintiff was examined by Dr. Ignacio for a fifth time.  (Id. at pp. 314-15).  At the March 2014 appointment, Plaintiff claimed to have mild pain that was a 4 on a scale of 1-10.  (Id. at p. 314).  Dr. Ignacio determined that Plaintiff's right shoulder pain "remained the same" and prescribed additional Tramadol and Naproxen.  (Id. at p. 315).

## II.  Plaintiff's Daily Activities Following November 2012

Plaintiff testified that following her resignation from work in November 2012, she participates in a number of daily activities.  Plaintiff lives with her husband and takes care of her granddaughter and gets her off to school.  (AR at p. 224, ECF No. 11).  Plaintiff cares for a small family dog and

small turtles.  (<u>Id.</u> at pp. 46-47, 224).

Plaintiff does some housework including dusting, wiping counters, and mopping floors.  (<u>Id.</u> at pp. 43, 225). Plaintiff is able to cook, load and unload some items in the dishwasher, and take clothes in and out of the washer and dryer.  (<u>Id.</u> at pp. 43-44).  She does not do any vacuuming or heavy housework.  (<u>Id.</u> at p. 43).

Plaintiff testified that she has difficulty reaching with her right arm but can lift "about 2.5 pounds."  (<u>Id.</u> at p. 39).  Plaintiff stated that she does not have any impairment that limits the use of her left arm.  (<u>Id.</u> at p. 39).

Plaintiff is able to drive a car and go out without assistance.  (<u>Id.</u> at pp. 45-46).  She shops in stores for food and clothing and manages her own financial affairs.  (<u>Id.</u> at pp. 46, 226).  Plaintiff is able do self care, shower, dress, shave, and brush her teeth.  (<u>Id.</u> at p. 44).  She watches television, reads books, takes walks, and goes to the beach. (<u>Id.</u> at pp. 46-47, 227).

## III.      Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 20 C.F.R.

§ 404.1520; 42 U.S.C. § 423.  The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled.  The Commissioner of the Social Security Administration reviews a disability benefits claim by evaluating the following:

(1)  Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)  Has the claimant's alleged impairment been sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled. If not, proceed to step four.

(4)  Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)  Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step

five.  <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001).

## IV.   The Administrative Law Judge Reviewed Plaintiff's Application By Using The Five-Step Sequential Evaluation

At Plaintiff's July 15, 2014 administrative hearing, the Administrative Law Judge ("ALJ") for the Social Security Administration reviewed Plaintiff's claim by engaging in the five-step sequential evaluation.

Both Parties agree that there were no errors by the ALJ in the first three steps of the evaluation.

<u>First</u>, the ALJ determined that Plaintiff was not engaged in substantial gainful activity since the date of her alleged onset date of disability of October 23, 2012.  (AR at p. 18, ECF No. 11).

<u>Second</u>, the ALJ found that Plaintiff had the following impairments that limited her ability to work: chronic massive rotator cuff tear, irreparable, with rotator cuff arthropathy and degenerative joint disease, of the right shoulder.  (<u>Id.</u>)

<u>Third</u>, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d), 404.1525, and 404.1526.  (AR at p. 18, ECF No.

11).

Plaintiff does not agree with the ALJ's evaluation at the final two steps of the five-step evaluation process. Plaintiff agrees that the ALJ correctly determined that she was unable to engage in her past work as a neonatal nurse. Plaintiff does not agree to the residual functional capacity that the ALJ determined at step four.  The ALJ evaluated the medical evidence, Plaintiff's testimony, and other evidence in the record to determine Plaintiff's residual functional capacity.

The ALJ determined, based on the testimony and medical evidence, that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [L]ift/carry 20 pounds occasionally and 10 pounds
> frequently with the left upper extremity;
> *precluded* from lifting, pushing or pulling with the
> right upper extremity more than 2.5 pounds; no
> reaching with the right upper extremity; can handle,
> finger, pinch and feel with the right hand, but can
> write with the right upper extremity only when close
> to the body, with elbow bent, arm perpendicular 90°
> or lower to the body; stand/walk about 6 hours of an
> 8 hour workday; sit for about 6 hours out of an 8
> hour workday; precluded from climbing
> ladders/ropes/scaffolds; precluded from crawling;
> and, avoid vibration.
>
> (AR at p. 19, ECF No. 11).

Plaintiff specifically objects to the ALJ's determination

that she could lift 2.5 pounds.

Plaintiff also challenges the ALJ's determination at step-five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given her age, education, work experience, and residual functional capacity.


**V.    Plaintiff Argues That The ALJ Erred In Denying Her Application Based On The Social Security Administration's Sequential Step Evaluation Process**

Plaintiff challenges the ALJ's decision on three grounds.


First, Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting the Plaintiff's testimony about the severity of her symptoms and inability to work at all.

Second, Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting the conclusion from orthopaedic surgeon, Dr. Elizabeth Ignacio, that Plaintiff could not lift any weight at all with her right arm.

Third, Plaintiff argues that the ALJ erred by relying on the testimony of the vocational expert to support her finding that there are jobs in the national economy that exist in

significant numbers that Plaintiff can perform.

> A.  **The ALJ Did Not Err In Declining To Credit Plaintiff's Testimony As To The Severity Of Her Symptoms And Her Claimed Inability To Work**

An individual's statement is not necessarily treated as conclusive evidence of disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a).

The claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  An ALJ may discredit the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ may consider many factors in weighing a claimant's credibility, including evaluating inconsistent statements concerning the claimant's symptoms against evidence of the claimant's participation in daily activities, and unexplained or inadequately explained failure of the claimant to seek treatment or to follow a prescribed course of treatment.  Id. at 1039.

The ALJ's credibility findings must be sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ made specific, clear and convincing findings to discredit Plaintiff's testimony as to the severity of her pain and her claimed inability to work.

> **1.    The ALJ Made Specific Findings That Plaintiff's Testimony Was Inconsistent With Her Participation in Daily Activities**

The ALJ found that Plaintiff's testimony regarding the severity of her pain in her right shoulder was not credible. (AR at pp. 20-23, ECF No. 11).

An ALJ may properly reject a claimant's testimony about the severity of her disability when it conflicts with her own testimony about her ability to care for her personal needs, cook, clean, shop, manage her finances, and interact with others.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff testified that she was involved in a wide range of daily activities.  Plaintiff maintains a household with her husband and granddaughter but reported she needs some assistance with heavy equipment or moving large items. Plaintiff explained that she takes care of her granddaughter and gets her off to school.  (AR at p. 224, ECF No. 11).

Plaintiff cares for a small family dog and small turtles.
(Id. at pp. 46-47, 224).  Plaintiff does housework and is able
to cook, load and unload some items in the dishwasher, and
take clothes in and out of the washer and dryer.  (Id. at pp.
43-44).

Plaintiff drives a car with use of both of her arms.
(Id. at pp. 45-46).  Plaintiff shops in stores for food and
clothing and manages her own financial affairs.  (Id. at pp.
46, 226).  Plaintiff performs her own personal care without
assistance from others and can shower, dress, shave, and brush
her teeth.  (Id. at p. 44).  She watches television, reads
books, takes walks, and goes to the beach.  (Id. at pp. 46-47,
227).

The ALJ stated,

[T]he claimant's reported activities of daily living
reveal a person capable of performing some level of
substantial gainful activity.  The claimant
testified that she is unable to work due [to]
limited use of right arm and pain.  However, she
also earlier reported a long list of activities of
daily living that include the following: she lives
in a house with family; cares for the family pets;
needs no reminders to take care of personal needs
and grooming; performs light household chores; can
drive a car; shops in stores; can manage her
financial affairs; watches television; takes walks;
can follow both written and spoken instructions; and
cares for her granddaughter.  This information,
coupled with claimant's testimony, where she
reported multiple activities of daily living,
further lessen her overall credibility that she can
do no work at all.  In fact, this sort of activity

23

> reveals a claimant who is not constantly
> experiencing pain or is complete[ly] [sic] limited
> by her right arm limitations. I find that the
> claimant's activities of daily living are further
> proof that she is capable of performing at least a
> range of light work, with appropriate
> limitations....

(AR at p. 22, ECF No. 11).

Plaintiff's testimony as to her participation in a wide range of daily activities did not support Plaintiff's testimony that her pain was so severe that she could not work at all. Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) (finding that plaintiff's engagement in daily activities provided clear and convincing evidence for discounting the claimant's testimony regarding the severity of her symptoms); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ acknowledged that Plaintiff's daily activities reflected that there were some limitations in the Plaintiff's use of her right arm.  The ALJ did not err in rejecting the claimant's allegations of a totally debilitating impairment. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing Turner v. Cmm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010)).

Plaintiff asserts that the ALJ erred because she did not make specific findings explaining the transferability of

24

plaintiff's participation in daily activities to tasks in the
workplace, citing <u>Tully v. Colvin</u>, 943 F.Supp.2d 1157 (E.D.
Wash. Apr. 30, 2013).  (Pla.'s Reply at p. 4, ECF No. 18).

Contrary to Plaintiff's assertion, the ALJ was not
required to explain the transferability of Plaintiff's daily
activities.  The ALJ's adverse credibility determination is
based on the contradictory nature of Plaintiff's testimony.
The ALJ found that Plaintiff's testimony that she is in near
constant pain and is fully disabled contradicts her testimony
that she is able to participate in extensive daily activities.


The Ninth Circuit Court of Appeals has held that a
plaintiff's testimony concerning her participation in daily
activities properly forms the basis of an adverse credibility
determination when such testimony contradicts other testimony
in the record.  <u>Orn v. Astrue</u>, 495 F.3d 625, 629 (9th Cir.
2007) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.
1989)).

Here, the ALJ's adverse credibility determination is
supported by the Plaintiff's contradictory testimony.  The
Plaintiff's testimony as to her participation in daily
activities directly contradicted her testimony that she is in
such consistent, severe pain that she is unable to work at

all.  The ALJ made a detailed analysis as to the extensive
daily activities that involved both of Plaintiff's arms.  The
ALJ properly found that this sort of activity reveals a
claimant who is not constantly experiencing pain or who is
completely limited by her right arm limitations.  (AR at p.
22, ECF No. 11).

> ### 2.   The ALJ Made Specific Findings That Plaintiff's Testimony Was Inconsistent With Objective Medical Evidence In The Record

The ALJ found that the Plaintiff's credibility regarding
the disabling degree of the pain and weakness in her right
shoulder was undermined by the objective medical evidence.
(AR at pp. 20-21, ECF No. 11).

First, the ALJ found that Plaintiff was not credible
because she failed to seek treatment for nearly three years
after her initial right shoulder injury in 2009.  (Id. at p.
21).  The ALJ stated that the three-year "gap in time, where
it appears the claimant received no treatment, lessens the
claimant's overall credibility as it is inconsistent with the
claimant's allegations of such severe pain and weakness."
(Id.)

Despite Plaintiff's claim that she was in pain since
injuring her shoulder in 2009, Plaintiff continued to work as

a NICU nurse in 2009, 2010, 2011, and 2012 without seeking any form of treatment for her right shoulder injury.  The ALJ did not err in finding that Plaintiff's failure to seek treatment for nearly three-years after her injury undermined Plaintiff's credibility.  Burch, 400 F.3d at 681; Marsh v. Colvin, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015).

Second, the ALJ found that although Plaintiff's medical records did support the finding that Plaintiff had very limited use of her right upper extremity, the records demonstrated that Plaintiff had good control of her pain with limited side effects.  (AR at p. 22, ECF No. 11).  The ALJ stated that there were no emergency room visits for "breakthrough pain" that would support a finding that Plaintiff's pain is work-preclusive.  (Id.)

There were large gaps in treatment and Plaintiff's self-reports of pain were inconsistent.  At Plaintiff's first appointment with Dr. Elizabeth Ignacio on October 15, 2012, Plaintiff reported that her pain was a "0-1" on a scale of 1-10 for severity.  (Id. at p. 285).

Just two weeks later, on October 30, 2012, Plaintiff reported to Dr. Marumoto that her pain was a 9 on a scale of 1-10 with 10 being the most severe.  (Id. at p. 282).  Dr. Marumoto's examination did not support such a high severity of

27

pain.  Dr. Marumoto did not prescribe any pain medications to
Plaintiff despite her self-report.  Dr. Marumoto found that
Plaintiff was "alert, oriented, and nondistressed," despite
her claim of being in severe pain.  (Id.)

Plaintiff was prescribed pain medication for the first
time nearly six months later in April 2013.  Plaintiff was
examined by Dr. Ignacio in April 2013 and Plaintiff claimed to
have "moderate" pain.  (Id. at pp. 267, 302-03).  Plaintiff
was prescribed pain and anti-inflammatory medication.  (Id. at
p. 319).  Plaintiff did not seek further medical attention for
nearly a year.

On March 13, 2014, Plaintiff was again evaluated by Dr.
Ignacio.  (Id. at p. 313).  Plaintiff reported that her pain
was "Mild" and was a 4 on a scale of 1-10.  (Id. at p. 312).
Plaintiff was offered an injection in her right shoulder for
pain but she refused.  (Id. at p. 313).  Plaintiff stated that
her pain "remained the same" and that her prescription
medications were sufficient to treat her pain.  (Id.)

The ALJ properly discounted Plaintiff's credibility that
her pain was so severe that she was unable to work at all
because it conflicted with the objective medical evidence in
the record.  Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600
(9th Cir. 1999); Garza v. Astrue, 380 Fed. Appx. 672, 673 (9th

Cir. 2010).

> **B.   The ALJ Did Not Err In Declining To Credit The Conclusion Of Dr. Elizabeth Ignacio That Plaintiff Could Not Lift Any Weight With Her Right Arm**

Plaintiff argues that the ALJ erred because she did not provide sufficient reasons for rejecting the conclusion of Dr. Elizabeth Ignacio that Plaintiff could not lift any weight with her right arm.  (Opening Brief at p. 14, ECF No. 16).

On June 19, 2014, more than three months after her last examination of Plaintiff, Dr. Ignacio wrote a letter to Plaintiff's attorney stating that she believed that "I think, with respect to [Plaintiff's] shoulder, that she should be restricted from any lifting at all with her right arm, and no reaching away from her body other than activities of daily living, but not for employment."  (AR at p. 332, ECF No. 11).

The ALJ afforded some weight to Dr. Ignacio's conclusions as to the physical limitations of Plaintiff.  The ALJ credited Dr. Ignacio's determination that Plaintiff's upper right extremity was limited in lifting, pushing, pulling, and reaching.  (Id. at pp. 22-23).  The ALJ discredited Dr. Ignacio's conclusion that Plaintiff was unable to use her upper right extremity at all for employment.  Tommasetti, 533 F.3d at 1041 (finding the ALJ properly rejected a treating

physician's opinion regarding the claimant's limitations that "did not mesh with her objective data or history").

The June 2014 conclusion of Dr. Ignacio contradicted Dr. Ignacio's prior evaluation of Plaintiff in April 2013. In April 2013, Dr. Ignacio found that Plaintiff's right shoulder injury constituted "a significant disability that makes employment difficult for her." (AR at p. 303, ECF No. 11). The ALJ properly found that the statement "implies that [Plaintiff] can still perform some work, as long as her right upper extremity limitations are taken into account." (Id. at p. 23).

The ALJ properly discounted Dr. Ignacio's conclusion that Plaintiff could not lift any weight with her right arm because it was inconsistent with the Plaintiff's own testimony. The Plaintiff herself testified that she can lift "probably about 2.5 pounds." (Id. at p. 39). The ALJ may properly discredit a treating physician's conclusion concerning the severity of a claimant's limitation when it conflicts with the claimant's own testimony. Molina, 674 F.3d at 1113 (citing Morgan, 169 F.3d at 600)).

### C. The ALJ Did Not Err In Relying On The Testimony Of The Vocational Expert

At step five of the sequential evaluation process, the

Commissioner for Social Security Administration must show that a claimant can perform some work that exists in significant numbers in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).

The Commissioner may satisfy this burden with testimony of a vocational expert.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); 20 C.F.R. § 404.1566(e).  A vocational expert's recognized expertise provides the necessary foundation to allow the ALJ to rely on his or her testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  The vocational expert's testimony is guided by the Dictionary of Occupational Titles, a resource complied by the United States Department of Labor that details the specific requirements for different occupations.  Gutierrez v. Colvin, 844 F.3d 804, 806 (9th Cir. 2016).

In this case, the ALJ posed a series of hypothetical questions to the vocational expert.  The ALJ asked the vocational expert a hypothetical about an individual of claimant's age, education and past work, who is able to lift and carry ten pounds frequently and 20 pounds occasionally with the left upper extremity, cannot lift, push or pull more

31

than two and a half pounds with the right upper extremity and
cannot reach in any way with the right upper extremity. (AR
at p. 57, ECF No. 11). The ALJ included in the residual
functional capacity the limitation that the individual can sit
for six hours in an eight hour day, can stand/walk for six
hours in an eight hour day, can never climb ladders, ropes, or
scaffolds, can never crawl, and should avoid all vibration.
(<u>Id.</u>)

The ALJ inquired if someone with such a residual
functional capacity would be able to perform work that was
similar to Plaintiff's prior work as a NICU nurse. (<u>Id.</u> at
pp. 56-57). The vocational expert testified that the closest
positions in the Dictionary of Occupational Titles would be a
General Duty Nurse, Medical Records Clerk, Utilization Review
Coordinator, or Unit Clerk. (<u>Id.</u> at pp. 57-59). The
vocational expert testified that all of these positions
required bilateral use of the upper extremities and required
frequent reaching. (<u>Id.</u> at pp. 59-65). The vocational expert
stated that someone with Plaintiff's residual functional
capacity would be precluded from performing any of these
positions. (<u>Id.</u> at pp. 59-65).

Next, the ALJ inquired if there were any other types of
occupations that existed in significant numbers in the

32

national economy that someone with Plaintiff's limitations could perform.  (<u>Id.</u> at p. 65).

The vocational expert testified that an individual with such a residual functional capacity could perform work in the following three positions:

(1) **Usher**, Dictionary of Occupational Titles Code 344.667-014, with an excess of 160 jobs in the local economy and at least 15,000 in the national economy;

(2) **Barker**, Dictionary of Occupational Titles Code 342.657-010, with around 500-600 jobs in the local economy and at least 40,000 in the national economy;[2]

and

(3) **Furniture Rental Consultant**, Dictionary of Occupational Titles Code 295.357-018, with around 300 jobs in the local economy and about 36,750 in the national economy.

(AR pp. 65-66, ECF No. 11).

---

[2] At the hearing Plaintiff's counsel indicated that the "Barker" occupation is equivalent to that of a "Carney." Review of the Dictionary of Occupational Titles reveals that the Barker occupation lists "Carney" and "Spieler" as alternative titles for the occupation.  The Dictionary of Occupation Titles defines the Barker occupation as follows:

Attempts to attract patrons to entertainment by exhorting passing public, describing attractions of show and emphasizing variety, novelty, beauty, or some other feature believed to incite listeners to attend entertainment.  May conduct brief fee show, introducing performing and describing acts to be given a feature performance.

(Dictionary of Occupational Titles Code 342.657-010, 1991 WL 672843).

The vocational expert's testimony constituted substantial evidence of Plaintiff's ability to perform work which exists in significant numbers in the national economy.  <u>Tackett</u>, 180 F.3d at 1101; <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756-57 (9th Cir. 1989).

ALJ's routinely rely on the Dictionary of Occupational Titles issued by the United States Department of Labor "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990).  The Dictionary of Occupational Titles is the presumptive authority on job classifications.  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995); <u>see</u> <u>Gutierrez</u>, 844 F.3d at 806.

The evidence shows that the ALJ considered the particular facts of Plaintiff's case and posed a complete hypothetical question to the vocational expert.  The ALJ incorporated the upper right extremity limitations set out in the objective medical reports in formulating the hypothetical question to the vocational expert.

### 1.   **The Vocational Expert's Testimony Was Internally Consistent**

Plaintiff argues that the vocational expert's testimony

34

was internally inconsistent.  Plaintiff claims it was inconsistent for the vocational expert to testify that Plaintiff could not perform the work of a Unit Clerk but could perform the work of a Furniture Rental Consultant.

Each of the Dictionary of Occupational Titles positions has different requirements.  A vocational expert's expertise provides the necessary foundation for his or her testimony regarding the Dictionary of Occupational Titles and no additional foundation is required for the ALJ to rely on his or her testimony.  Bayliss, 427 F.3d at 1217-18.

The ALJ did not err in relying on the vocational expert's testimony that someone with Plaintiff's residual functional capacity could not perform the Unit Clerk position but could perform the Furniture Rental Consultant position.  The vocational expert testified that unlike the Unit Clerk position, the Furniture Rental Consultant position required "a limited amount of paperwork." (AR at p. 66, ECF No. 11).  The vocational expert testified that such paperwork could be performed on the lap as permitted by the residual functional capacity. (Id. at p. 67).  The vocational expert testified that the large amount of paperwork required to be completed by a Unit Clerk would preclude someone with Plaintiff's limitations from performing the job. (Id. at p. 64).

There was nothing inconsistent about the vocational expert's testimony.  <u>Gutierrez</u>, 844 F.3d at 807-09.   The ALJ properly relied upon the expertise of the vocational expert that someone with Plaintiff's residual functional capacity could perform the job of a Furniture Rental Consultant. <u>Bayliss</u>, 427 F.3d at 1217-18.

> **2.    The ALJ Properly Relied Upon the Vocational Expert's Testimony As To The Number Of Available Usher And Barker Positions**

Plaintiff argues that the ALJ erred when she relied on the testimony of the vocational expert to determine that there were significant number of Barker and Usher positions available in the economy.  (Opening Brief at p. 29, ECF No. 16).

Plaintiff's argument fails for a number of reasons.

First, even if the Court accepted Plaintiff's argument as to the availability of the Usher and Barker positions, the vocational expert's testimony as to the availability of 36,750 Furniture Rental Consultant positions in the national economy was sufficient enough to demonstrate that a significant number of jobs exist.  <u>Gutierrez v. Comm'r of Soc. Sec.</u>, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding that 25,000 jobs in the national economy is enough to show a "significant number").

Second, Plaintiff seeks to introduce new evidence on appeal before the Court here as to the number of Usher and Barker positions she believes are available. (See Exhibits 1-4 attached to Pla.'s Opening Brief, ECF Nos. 16-1—16-4). Plaintiff is precluded from introducing new evidence on appeal. Plaintiff filed both a post-hearing brief and a brief with the Appeals Council after the ALJ hearing. (AR at pp. 269-74, 276-78, ECF No. 11). Plaintiff did not submit the evidence that she seeks to introduce before this Court to the agency in either her post-hearing or appeals council briefs.

In Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), the plaintiff argued that the jobs identified by the vocational expert at the administrative hearing did not exist in significant numbers and attempted to introduce new statistical evidence on appeal. The Ninth Circuit Court of Appeals held that the plaintiff, who was represented by counsel at the administrative hearing, was precluded from doing so. Id. The appellate court held that a claimant must present all evidence at her administrative hearing in order to preserve the evidence and argument in the record on appeal. Id.

Just as in Meanel, Plaintiff disagrees with the vocational expert's testimony and is attempting to introduce

37

new statistical evidence on appeal that was not filed before
the agency.   Plaintiff is precluded from introducing this
evidence.

Third, the ALJ's reliance on the testimony of the
vocational expert as to the number of relevant jobs in the
national economy was proper.   <u>Bayliss</u>, 427 F.3d at 1217-18.

Plaintiff argued in her post-hearing brief to the ALJ
that she conducted her own calculations using OccuBrowse and
believes the calculations are inconsistent with the vocational
expert's testimony.   (AR at pp. 269-74, ECF No. 11).

The ALJ rejected Plaintiff's argument.   The ALJ stated as
follows:

> I also accept the numbers cited by the vocational
> expert as significant.  The vocational
> expert testified that he relied for his numbers on Job
> Browser Pro, not OccuBrowse, as representative
> alleges.  I credit his testimony regarding the
> number of jobs in this case as based on his use of
> this tool and on his considerable experience,
> education, and contacts in the field of vocational
> rehabilitation.

(AR at p. 25, ECF No. 11).

Plaintiff now attempts to argue that the vocational
expert's testimony as to the numbers provided in Job Browser
Pro were incorrect.   Plaintiff's argument is not persuasive.
Courts in the Ninth Circuit have routinely held that the ALJ
does not err in relying on the vocational expert's testimony

as to the number of jobs available in the economy.  The ALJ is not required to rely on a claimant's lay opinion that challenges the vocational expert's calculations.  <u>Edington v. Colvin</u>, 625 Fed. Appx. 334, 335 (9th Cir. 2015); <u>Simmons v. Colvin</u>, 2016 WL 6436829, *11-12 (C.D. Cal. Oct. 31, 2016); <u>Early v. Colvin</u>, 2015 WL 4231598, at *8 (W.D. Wash. July 10, 2015); <u>Parker v. Colvin</u>, 2014 WL 3672923, at *5-6 (D. Or. July 22, 2014); <u>Cardone v. Colvin</u>, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014).

To the extent that the vocational expert's data could be interpreted in the way Plaintiff contends, "where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  <u>Thomas</u>, 278 F.3d at 954.

The Court has reviewed the entire record and finds that there is substantial evidence to support the ALJ's decision.

<u>**CONCLUSION**</u>

The Commissioner of Social Security Administration's decision is **AFFIRMED**.


//

//

The Clerk of Court is Ordered to **CLOSE THE CASE**.

IT IS SO ORDERED.

DATED: January 25, 2017, Honolulu, Hawaii.



_____
Helen Gillmor
United States District Judge

Judy Diane Noyes v. Carolyn W. Colvin, Social Security
Administration Commissioner; Civ. No. 16-00252 HG-KSC; **ORDER
AFFIRMING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION
COMMISSIONER**